UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
TIVIA LEITH on her behalf and on behalf of her                    **DOCKET NO.:**
infant son "K. D.",

Plaintiffs,

     -against-

THE COUNTY OF NASSAU, THE NASSAU COUNTY
POLICE DEPARTMENT, POLICE OFFICER K. SOVARAS
Badge #9377, in his official and individual capacity,                    **COMPLAINT**
POLICE OFFICERS JOHN/JANE DOES #1-10
in their official and individual capacities,  all of whom are
known by name by Defendants, but are not known to Plaintiff,
NEW YORK STATE TROOPERS JOHN ROES #1-10,
in their individual capacities,  all of whom are
known by name by Defendants, but are not known to Plaintiff,

Defendants.     ***JURY TRIAL DEMANDED***
----------------------------------------------------------------------X

     PLAINTIFFS TIVIA LEITH (hereinafter "Ms. Leith" or "Plaintiff") and on behalf of her infant son "K. D.", by and through their attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON, as and for their Complaint, states and alleges the following against the above named Defendants.

**PRELIMINARY STATEMENT**

     1.     This is a civil action seeking monetary relief from THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER K. SOVARAS Badge #9377, in his official and individual capacity, POLICE OFFICER OFFICERS JOHN/JANE DOES #1-10 in their official and  individual capacities,  all of whom are known by name by Defendants, but are not known to Plaintiff, NEW YORK STATE TROOPERS JOHN ROES #1-10, in their individual capacities,  all of whom are known by name by Defendants, but are not known to Plaintiff, for committing acts under color of law and depriving Plaintiff of her rights secured by the

Constitution and laws of the United States and the State of New York. Plaintiff alleges that Defendants without probable cause used unnecessary force, inflicted physical and emotional harm, and negligently, intentionally, and without cause, falsely arrested, malicious prosecution, falsely imprisoned, and stripped searched Plaintiff, causing physical harm and pain and suffering, all in violation of her constitutional and civil rights.

## JURISDICTION AND VENUE

2.　　This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and the First, Fifth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.

3.　　Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiffs reside in Nassau County, New York and the Defendants are conducting business in the State of New York, specifically Nassau County.

## PARTIES

4.　　PLAINTIFF TIVIA LEITH (hereinafter "Ms. Leith" or "Plaintiff") is a Black/African-American woman, and at all relevant times to this Complaint resided in Nassau County, New York.

5.　　PLAINTIFF "K. D." is an infant Black/African-American male and at all relevant times to this Complaint resided in Nassau County, New York.

6.　　Defendant COUNTY OF NASSAU (hereinafter "COUNTY") was and is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

7.　　Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter "POLICE DEPARTMENT"or "NCPD") is an agency of NASSAU COUNTY.

8.      Upon information and belief, POLICE OFFICER K. SOVARAS (Badge #9377) (hereinafter "Defendant K. SOVARAS" or "SOVARAS"), sued in his official and individual capacity, was at all relevant times employed by the COUNTY as a Police Officer in the Nassau County Police Department.  At all times relevant hereto, Defendant SOVARAS acted, or purported to act, under color of law.

9.      Upon information and belief, NASSAU COUNTY POLICE OFFICERS JOHN/JANE DOES #1-10 (hereinafter "NASSAU JOHN/JANE DOES #1-10") are sued in their official and individual capacities all of whom are known by name by Defendants, but are not known to Plaintiff. Requests were made on September 1, October 6, and November 7, 2022 in writing to the COUNTY for the names of the Nassau Police Officers involved in this matter, however, COUNTY has failed to provide any response.  Further, phone calls were made to Ms. Liora Ben-Sorek requesting the name of each and every officers involved in the stop, arrest, imprisonment, search and transport of Plaintiffs, but COUNTY has failed to provide any of the names of the officers.

10.     Upon information and belief, NEW YORK STATE TROOPERS JOHN ROES #1-10 are sued in their individual capacities all of whom are known by name by Defendants, but are not known to Plaintiff. Requests were made on September 1, October 7, and November 7, 2022 in writing to the New York State (NYS) Office of the Attorney General Nassau Regional Office  for the names of the NYS Troopers involved in this matter, however, New York State Office of the Attorney General Nassau Regional Office has failed to provide any of the names of the officers. Requests have been made to the NYS Office of the Attorney General Nassau Regional Office for the names of the NYS Troopers involved in this matter, the message was said to be forwarded to the Attorney General's FOIL officer but Plaintiff has yet to receive any further response.

11.     Upon information and belief each of the individual Defendants named herein and all

3

of whom are known by name by Defendants, but are not known to Plaintiff, are Caucasian.

## FACTUAL ALLEGATIONS

12.     On December 7, 2021, at or about 5 p.m. Ms. Leith was lawfully driving with her nine (9) year old son, K.D., after picking him up from school.

13.     Ms. Leith was driving lawfully with her seatbelt on and was not speeding. The traffic was moving slowly as it was rush hour on a weekday.

14.     To Ms. Leith's shock and surprise, at or around 5 p.m., while lawfully driving on the Sunrise Highway-Newbridge Road, Bellmore Section, Ms. Leith was pulled over by Nassau County Police Officers.

15.     Upon being pulled over, Ms. Leith asked the Nassau County Police Officer, who is now known to be Defendant K. Sovaras, Badge #9377, for the reason she was being pulled over.

16.     Upon Plaintiff's request Defendant Sovaras did not provide Ms. Leith with a reason for the stop and instead told her to hold on.

17.     After taking Ms. Leith's license and registration, Defendant Sovaras went back to his police vehicle.  After the passage of some minutes, Defendant Sovaras returned to Plaintiff's car. Upon his return to Ms. Leith's car Defendant Sovaras said that Plaintiff had an outstanding New York State warrant.

18.     Ms. Leith questioned how was it that she had an outstanding state warrant for her arrest when she had just began a security job, in which a full background check was conducted on her prior to receiving the job. Defendants disregarded these crucial facts.

19.     Defendant Sovaras then commanded Ms. Leith and her infant son, K. D., to exit her vehicle. Ms. Leith, although very concerned for her safety and the safety of her son, obeyed the instructions and exited her vehicle and complied with all of the NCPD Officers' commands.

20.     At one point during the interaction, three (3) more Nassau County Police Department (hereinafter "NCPD") cars pulled up to the scene.

21.     Upon information and belief, Defendant Sovaras was training or mistraining the other NCPD officers who were present.

22.     Ms. Leith, in utter disbelief as to what was happening, humiliated, embarrassed, and scared, began to cry in fear. While the police had no reason to search Plaintiff's car, they did so anyway. Nothing illegal was found.

23.     Defendant Sovaras and/or his partner (NCPD John Doe #1)told Ms. Leith to place her son in police custody because she was going to be arrested for the alleged state warrant. That statement placed Plaintiff in greater fear and distress. Ms. Leith knew she had done nothing wrong and refused to place her young African American son in police custody.

24.     K. D. was also in shock and crying due to the traumatic experience caused by Defendants.

25.     Seeing K.D. crying out of fear caused Ms. Leith great emotional pain and suffering. To avoid having K.D. being taken into the custody of police, Plaintiff called his father.

26.     At no point, during the stop or at the scene, did Defendant Nassau County Police Officers give Ms. Leith any traffic tickets or announced or even suggest that she had committed any traffic and/or vehicle violations.

27.     Once her infant son's father arrived, he took custody of K.D. but not before he witnessed his mother be arrested, handcuffed and treated with any level of dignity or human regard all of which she was entitled.  Ms. Leith remained in handcuffs with her hands behind her, and was placed in the NCPD police car, and then taken to Defendant County's Police Department First

Precinct in Baldwin by Defendant Sovaras and NCPD Officers.

28.     During the time Ms. Leith remained in handcuffs, she informed the police that she was in excruciating pain from the positioning of the handcuffs because she had a shoulder injury. Plaintiff requested that Defendants John Doe 1-10 to adjust the cuffs.

29.     Not only did Defendant Officers John Doe 1-10 refused to take action at the time of the request, but Defendant NCPD Officers refused to adhere to her requests to adjust the cuffs. Defendant NCPD Officers would not adjust or take Ms. Leith out of the handcuffs until approximately three (3) hours later.

30.     During that three (3) hours Plaintiff was in extreme pain and unable to gain any relief. At that time, a female NCPD officer took physical custody of Plaintiff and conducted a wrongful and unlawful strip search. This same female NCPD Jane Doe was present throughout the entire time Plaintiff was requesting her cuffs to be adjusted or taken off. Such a delay was intentional, callous, and unnecessary.

31.     NCPD recognizes and defines "Strip Search" as "the removal or rearrangement of any clothing which permits inspection of the genitals, buttocks, anus, or female breasts." [1]

32.     Pursuant to Nassau County Police Department rules, the conducting of strip searches are to be conducted only when: "there is reasonable suspicion that a person is concealing a weapon, dangerous instrument, contraband, evidence of an offense, or any other instrument, article or substance that may facilitate escape, and there is no other reasonable method to obtain the items unless a strip search is undertaken without delay."[2]

---

[1] Article 17, Rule 3.3(b) of the NCPD Rules relating to Prisoner Search and Strip Searches.

[2] Article 17, Rule 3.3 ( c) of the NCPD Rules relating to Strip Search Justification.

33.     The female NCPD Jane Doe then magnified the traumatic experience by commanding Ms. Leith to completely disrobe and remove all of her clothes and jewelry while her private body parts were invasively and wrongfully checked. Ms. Leith was in utter humiliation and shock because she felt that the strip search was extremely demeaning, especially since she had committed no crime and knew she could not have had an outstanding state warrant for her arrest.

34.     There was no reason or justification for Ms. Leith to be subjected to a strip search. This unreasonable, incursive and unwarranted strip search was in violation of Ms. Leith's rights.

35.     This furthered the humiliation and embarrassment Ms. Leith had to wrongfully endure. None of which was authorized by law or justified in any way.

36.     Upon information and belief, there was no entry into the records systems of the NCPD or any command record of all the facts and circumstances that detail any reasonable suspicion necessary to justify the strip search of Plaintiff.  Any such entry would be a manufactured and false entry and would be contrary to law and the rights of Plaintiff.

37.     Defendant NCPD Officers, including but not limited to Defendant Sovaras, informed Ms. Leith that they were continuing to detain her until the New York State Trooper(s) arrived because she had an outstanding state warrant of over a year.

38.     After being wrongfully detained by Defendants County and NCPD Officers for approximately four (4) hours, Defendant New York State Trooper John Roe arrived to the NCPD First Precinct to continue Ms. Leith's wrongful and vocative confinement.

39.     It was not until this time that Defendant K. Sovaras gave Ms. Leith the trumped up, false, fabricated and malicious vehicle violation tickets. Defendant Sovaras then said to Ms. Leith, in sum and substance: "At least you don't have a warrant in your name anymore, it's cleared."

7

40.     Once again, Ms. Leith was confused as to what warrant Defendant Sovaras was referring and how it being "cleared" did not result in her immediate release.

41.      Initially, Defendant NYS Trooper John Roe transported Ms. Leith to the New York State Trooper Headquarters for her to be processed. Ms. Leith was wrongfully confined at the Headquarters for approximately two (2) to three (3) hours.

42.     Then, Defendant NYS Trooper John Roe transported Ms. Leith to a state Detention Center because he stated that Ms. Leith had no bail and had to see a judge for release.

43.     To further Plaintiff's anguish, while at the state Detention Center, Defendant NYS Trooper Jane/John Roes asked why Plaintiff was there because there was no record of a warrant for Plaintiff's arrest.

44.     In fact, another New York State Trooper stated, in Ms. Leith's presence, in sum and substance, "I told the other asshole (Police Officer) from Nassau that the warrant was vacated since September."

45.     Defendant NYS John Roe replied stating "My partner probably took the warrant out [the system] because we caught her." This was the farthest thing from the truth as the other NYS officer said only a judge could do that.

46.     To give some background, Ms. Leith had only one prior offense before this wrongful arrest. On August 28, 2020, was charged with a DWI. A bench warrant was issued for Ms. Leith on August 25, 2021 which was vacated by the Hon. Chris J. Coschignano upon Ms. Leith's appearance on September 20, 2021. Ms. Leith plead guilty to a lesser charge on September 28, 2021 and was ordered to pay fines and complete an alcohol treatment program. Ms. Leith paid all of her fines and completed her treatment program on November 10, 2021.

47.     Any claim of an outstanding New York State warrant of a year for Ms. Leith's arrest was a fabrication and untrue.

48.     In light of those facts and hearing what the state troopers were saying, the fear and pressure of it all, made Ms. Leith become frantic and she begin to cry. Ms. Leith's anxiety started to race as she was confused and terrified as to the reason she was being subjected to a level of mistreatment by Defendants that stripped her of her dignity which was unexpected and unauthorized.

49.     Ms. Leith remained in handcuffs, in custody and in fear of her safety and well being for an additional one (1) to two (2) hours. During her detention, Ms. Leith was placed in a empty cell that was freezing cold, was not supplied with any blanket, was made to feel lonely, scared and had to compose herself before she potentially fainted due to the stress.

50.     Ms. Leith had to suffer through Defendants' actions although she did nothing wrong.

51.     After over eleven (11) hours of wrongful arrest, wrongful confinement, and false imprisonment, Defendant NYS Trooper John Roe placed Ms. Leith in a NYS Trooper car and drove to her residence at approximately 4 a.m. on December 8, 2021.

52.     Despite their clear false arrest and abuse to which Plaintiff was subjected, no one took the time to explain what had transpired to lead to the deprivation of Ms. Leith's liberty and apologize to her and her son K.D. for the horror to which they were subjected.

53.     While being transported to her home, by a NYS Trooper Ms. Leith was finally offered food and a beverage, which was clearly an attempt to cover up the wrongs committed collectively by Defendants.  No apology was offered.

54.     Following her release, on or about December 9, 2021, Ms. Leith went back to NCPD First Precinct and requested proof and some form of documentation of her seizure, jailing and being

wrongfully and unlawfully arrested and violated.

55.     To her great insult, surprise and dismay, Defendant County Police Officers refused to engage with Ms. Leith and rebuffed her request to provide documentation and instead stated that they could not provide any paperwork and that if she wanted any type of paperwork, she had to "file a FOIL (Freedom of Information Law) request" to obtain such information.

56.     After having her freedom taken from her, being issued false and fabricated tickets as a cover up, being jailed, being handcuffed, being made to suffer pain, being subjected to an invasive strip search, being placed in a jail cell, being subjected to cold and deplorable physical conditions, and deprived of her family and home, Ms. Leith was denied any documentation or any form of proof of that she was taken out of the general society for a period of approximately half a day on December 7-8, 2021.

57.     Plaintiffs, Ms. Leith and her infant son K.D.'s mental and emotional states are forever changed for the worst.

58.     Now when Ms. Leith sees police on the road, she is in constant fear of being pulled over, arrested, and strip searched for no lawful reason.

59.     To cope with the trauma caused by Defendants, Ms. Leith as well as her son K.D.,had to seek therapy.

60.     Although therapy has provided some helpful, due to the limitations of her insurance coverage, Ms. Leith has had to reduce the frequency of her therapy sessions because she was no longer covered for the much needed two sessions a week.

61.     On December 7, 2021 Ms. Leith and her son K.D. were victimized and subjected to racial profiling and should have never been wrongfully stopped and pulled over without probable

cause by Defendants. Plaintiffs should not have been forced to experience the deprivations thrust upon them.

62.     On December 7-8, 2021, Ms. Leith should have never been wrongfully arrested with excessively tight handcuffs by Defendants. K.D. should not have been forced to see his mother in handcuffs for no lawful reason.

63.     On December 7, 2021, Ms. Leith should have never been wrongfully strip searched by Defendants. Such an unlawful, invasive, and demeaning experience had never occurred to Ms. Leith before, and it should have never happened to begin with.

64.     Ms. Leith should have never been wrongfully confined and deprived of her freedom for eleven (11) plus hours without Defendants having any valid warrant.

65.     Plaintiff was subjected to racial profiling, being stopped, arrested and strip searched without legal cause or justification. Defendant County through Defendant K. Sovaras and other NCPD Officers, intentionally targeted and racially profiled Ms. Leith on the basis of her being African American. Inexplicably, Defendants Sovaras did such under the guise of having a phantom state arrest warrant, all while improperly training other NCPD Officers. The unlawful arrest, unlawful confinement and abuse committed by Defendant NCPD was continued and furthered by Defendant NYS Trooper John Roes #1-10 would detained Ms. Leith unlawful for several additional hours.

66.     Prior to Plaintiff having been stopped and required to provide her license she had committed no crime or violation of law.  There was no reasonable basis upon which her stop by Nassau County Police, including but not limited to Defendant K. Sovaras and other NCPD Officers, would be justified or supported.

67.    The improper and unlawful stop, detention and arrest of Plaintiff was race based and was consistent with the ongoing pattern and practice of Nassau County Police to unjustifiably claim crimes by African-American person at a level of which demonstrates a disparate racial impact which supports that Nassau has a history of arresting African-American persons at a rate of which statistically supports racial discrimination in arrests which negatively and improperly impacts the rights of African-American persons like Plaintiff.

68.    Nassau County Police Department and Nassau County has known that their officers have engaged in a pattern of arresting African-Americans at a disproportionate level as compared to Whites. Prior to Plaintiff's stop and arrest, Nassau County Police and Nassau County knew that in the year 2018 that White persons made up approximately 59.6% of the total population of the County Nassau and that Black persons made up approximately 11.1% of the population of Nassau County. Based on data from Nassau County 6,219 White persons were arrested in the year 2018 and 5,509 Black persons were arrested by Nassau County Police. The evaluation of those numbers demonstrates that in the year 2018, the arrest cohort ratio of Black persons to White persons was 4.7 to 1.0.

69.    Nassau County Police Department and Nassau County has known that their officers have engaged in a pattern of arresting African-Americans at a disproportionate level as compared to Whites. Prior to Plaintiff's stop and arrest, Nassau County Police and Nassau County knew that in the year 2019 that White persons made up approximately 59.6% of the total population of the County Nassau and that Black persons made up approximately 11.1% of the population of Nassau County. Based on data from Nassau County 5,192 White persons were arrested in the year 2019 and 5,136 Black persons were arrested by Nassau County Police. The evaluation of those numbers

demonstrates that in the year 2019, the arrest cohort ratio of Black persons to White persons was 5.3 to 1.0.

70.    Based on the Nassau County Arrest Data analyzed in the chart below, Nassau County knew or reasonably should have known that its police were arresting African-American persons at a level which demonstrated race based arrests by its police department.

| NCPD Arrest Data | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cohort | Asian | Black | Hispanic | Other | White | Unknwn | Total |
| Population (2017 est) | 133,666 | 152,447 | 234,881 | 32,377 | 816,143 | N/A | 1,369,514 |
| % Total Population | 9.8% | 11.1% | 17.2% | 2.4% | 59.6% | N/A | 100.0% |
| 2018 Arrests | | | | | | | |
| Male | 402 | 4,118 | 2,805 | 253 | 4,639 | 205 | 12,422 |
| Female | 166 | 1,391 | 779 | 54 | 1,580 | 31 | 4,001 |
| Combined | 568 | 5,509 | 3,584 | 307 | 6,219 | 236 | 16,423 |
| Cohort % of Total | 3.5% | 33.5% | 21.8% | 1.9% | 37.9% | 1.4% | 100.0% |
| Cohort Frequency Rate | 0.00425 | 0.03614 | 0.01526 | 0.00948 | 0.00762 | | |
| Cohort Ratio : Whites | 0.6 | 4.7 | 2.0 | 1.2 | 1.0 | | |
| | | | | | | | |
| 2019 Arrests | | | | | | | |
| Male | 560 | 3,839 | 2,722 | 74 | 3,893 | 14 | 11,102 |
| Female | 229 | 1,297 | 748 | 10 | 1,299 | 3 | 3,586 |
| Combined | 789 | 5,136 | 3,470 | 84 | 5,192 | 17 | 14,688 |
| Cohort % of Total | 5.4% | 35.0% | 23.6% | 0.6% | 35.3% | 0.1% | 100.0% |
| Cohort Frequency Rate | 0.00590 | 0.03369 | 0.01477 | 0.00259 | 0.00636 | | |
| Cohort Ratio : Whites | 0.9 | 5.3 | 2.3 | 0.4 | 1.0 | | |

Population data source: http://www.city-data.com/county/Nassau_County-NY.html

71.    The arrest data for the year January 2021 through December 2021[3] provides an even more concerning statistical picture.

_____

[3]  Reported by Long Island United Police Accountability Working Group in their report entitled, Monitoring Police Reform in Nassau County, October 2022 which used data issued by Nassau County.

| Arrest Demographics | Male | Female | Unknown/ Other | Total | % of Total |
|---|---|---|---|---|---|
| American Indian/Alaskan Native | 26 | 4 | 0 | 30 | 0.3% |
| Asian/Pacific Islander | 471 | 134 | 0 | 605 | 5.9% |
| Black | 2,812 | 844 | 0 | 3,656 | 35.6% |
| Hispanic/ Latino | 2,054 | 523 | 0 | 2,577 | 25.1% |
| Other | 0 | 1 | 0 | 1 | 0.0% |
| Unknown | 0 | 3 | 0 | 3 | 0.0% |
| White | 2,529 | 871 | 0 | 3,400 | 33.1% |
| Total | 7,892 | 2,380 | 0 | 10,272 | 100.0% |

72.   As demonstrated by the chart above[4] the actual number of Black/African-Americans arrested in the year 2021 exceeded the number of Whites arrested despite the Black community making up only 10.6% of the Nassau County's total population.[5] For the years 2018, 2019 and 2020 the racial disparity of arrests between Blacks and Whites in Nassau County increased despite the fact of these disparities being known to Nassau County and the NCPD.

73.   In the matter of traffic stops, which is what led to Ms. Leith's false arrest, upon information and belief, Black people in Nassau County are 4.2-5.6 times more likely to be stopped than White people. Upon information and belief, in Nassau County Latino individuals are 4.1-5.5 times more likely to be stopped than White people.

74.   Rather than address the clear racial disparities in traffic stops and arrests, the Commissioner of the NCPD asserted at a hearing before the Nassau County Legislature that the data from his department should be explained by his supposition that many non-white residents may be

---

[4] The chart provided is a direct copy of sections of reports issued publicly by Nassau County.

[5]  According to Nassau County, the population data used was from the 2020 census.

14

entering the county and "[coming] here to commit some kind of criminal act."[6]

75.     Data clearly shows that the NCPD has failed to address its mandated requirement and stated commitment to reducing racial bias in policing.[7] Across nearly all dimensions including Arrests, Field Interviews (FI), Use of Force, and Vehicle and Traffic Law (VTL) stops, racial bias is prevalent.

76.     A carful review of the data reveals no empirical justification for relevant racial disparities.

77.     According to available data[8], in Nassau County, upon information and belief,  Black people are  subject to traffic stops at 3.1 times the rate of White people; Black people are subject to Terry Stops at 4.7 times the rate of White people; and Black people are subject to being frisked at 6.8 times the rate of White people.

78.     Combined, these findings provide compelling indicia of the impermissible consideration of race as a factor in discretionary enforcement actions by NCPD.

79.     In Nassau County it is implausible that Black people are inherently three times more inclined than white people to commit traffic violations and/or to engage in criminal conduct.

---

6

https://www.wshu.org/long-island-news/2022-02-04/nassau-police-say-non-residents-are-causing-racial-enforcement - disparity-data-suggests-otherwise

[7]  New York State Executive Order 203 was issued as a means of addressing "racially-biased law enforcement [and] to demand change, action, and accountability"16 in the wake of the murder of George Floyd.  The NCPD, in response, developed a plan that it claimed would continue "robust community-oriented policing strategies while working toward further reducing racial disparities in policing."

[8] Unlike many law enforcement agencies, including neighboring SCPD, NCPD does not provide public access to source enforcement data in delimited text digital format. That prevents meaningful interrogation of the data.  In addition, the data that NCPD did release did not include metrics by cohort for each enforcement activity. That limitation prevents calculation of cohort frequency rates.  Further, upon and information belief NCPD does not maintain, or has not made public it's data as to strip searches of person taken into custody.

80.     Defendants Sovaras and other NCPD officers and New York State Troopers whose names are unknown  abused their authority by arresting, confining and detaining Ms. Leith. In doing so, Defendants caused serious and unjustifiable harm to Ms. Leith and her infant son, K.D.

81.     All Defendants acting under the color of law,  Plaintiff assert the following causes of action against Defendants Sovaras and other NCPD officers and New York State Troopers whose names are unknown.

82.     In addition to experiencing the abuse of being falsely arrested, jailed, cuffed, strip searched, denied her liberty and being the victim of race based mistreatment, Ms. Leith was required to address the tickets which were issued to her for the purpose of covering up the wrongful actions of Defendants Sovaras and other NCPD officers.

83.     The issuance of those tickets and underlying claims made in those tickets were a pretext for discrimination and race based mistreatment as is often the case when Nassau Police stop African-Americans.

84.     Those tickets required Ms. Leith to appear in Court, hire counsel and fight those summons which were pretextually and maliciously issued.  As of November 9, 2022, both trumped up vehicle violation tickets given to Ms. Leith by Defendant Sovaras were dismissed outright and concluded the malicious and pretextual charges leveled against her.

## AS AND FOR A FIRST COUNT
## 42 U.S.C. § 1983 - FALSE ARREST AND MALICIOUS PROSECUTION

85.     Plaintiff repeat and reiterate the allegations set forth in paragraphs 1 through 84 of this *Complaint* with the same force and effect,  as if the same were fully set forth herein.

86.     The accusations of wrongful conduct against Plaintiff  were improper and false, and

16

were an attempt to disguise and coverup the wrongful acts and race based actions of the Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, causing a deprivation of Plaintiff's rights, privileges, and/or immunities secured by the Constitution and laws.

87. Under color of the law, the Defendants deprived the Plaintiff of her Fifth, Sixth and Fourteenth Amendment rights not to be deprived of life, liberty, or property without due process of law, and of their Fourth Amendment right to be free from unlawful searches and seizures by falsely arresting, wrongfully detaining, unlawfully assaulting, malicious prosecution, unconstitutionally conducting a strip search, and falsely holding Plaintiff for no reason and for which there is no evidence or substantiation of any kind.

88. On December 7, 2021, Plaintiff was placed in fear of her life, falsely seized, falsely detained and falsely arrested issued pretextual and malicious summons after realizing that their arrest and false allegations made would not withstand scrutiny including the action of defendants subjecting Ms. Leith to painful excessive and unreasonable force, demeaning and dehumanizing actions and unlawful search and seizure.

89. On December 7, 2021, Plaintiff was placed in fear of his life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against her will without justification, explanation or rationale for such detention.

90. On December 7-8, 2021, while being detained Plaintiff, Defendant Officers refused to provide information and documentation about her wrongful arrest and prosecution and placed

17

Plaintiff in a state of horror and terror which was elevated upon the use of tickets at act as a pretext for her arrest and detention.

91.     Upon information and belief such continued seizure, arrest and issuance of the pretextual tickets was ordered and was carried out by Defendant County and Defendant Officers with a callous, deliberate indifference to Plaintiff's known constitutional rights.  The false charges leveled against Plaintiff were all dismissed and were issued to her for the purpose of covering up the wrongful actions of Defendants Sovaras and other NCPD officers.

92.     The issuance of those tickets and underlying claims made in those tickets were a pretext for discrimination and race based mistreatment as is often the case when Nassau Police stop African-Americans.

93.     The accusations of wrongful actions leveled against the Plaintiff were false and an attempt to cover up the false arrest, abuse of process which had been inflicted by Defendants on Plaintiff.  Defendants lacked probable cause to seize Plaintiff.

94.     Such actions were intentional, negligent, reckless, callous, unreasonable and unauthorized, as Defendants had a duty not to subject Plaintiff to the use of excessive force by conducting an unlawful strip search, and false arrest, all in violation of 42 U.S.A. §1983.

95.     The Defendants acted under color of law to deny the Plaintiff her Constitutional rights of due process and freedom from seizure by wrongfully detaining them under the threat of imprisonment without providing any reasonable basis or investigation warranting prosecution, or other due process guarantees secured to the Plaintiff.  The Defendants detained the Plaintiff without any probable cause, therefore lacking proper legal authority.

18

96.     As a consequence of Defendants' wrongful actions, negligent behavior, and violation of federal laws, Plaintiff was deprived of her freedom, made to suffer injuries, and subjected to great fear, terror, personal humiliation, and degradation. Plaintiff continues to suffer mental and emotional distress, as well as physical pain as a result of the aforesaid unlawful conduct of the Defendants until their release and beyond.

97.     In doing so, Defendants caused serious and unjustifiable harm to Ms. Leith and her infant son, K.D.

98.     That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

## AS AND FOR A SECOND COUNT
## 42 U.S.C. § 1983 - FALSE IMPRISONMENT

99.     Plaintiff repeat and reiterate the allegations set forth in paragraphs 1 through 98 of this *Complaint* with the same force and effect, as if the same were fully set forth herein.

100.     The accusations of wrongful conduct against Plaintiff were improper and false, and were an attempt to disguise the Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, causing a deprivation of their rights, privileges, and/or immunities secured by the Constitution and laws.

101.     The Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by

name by Defendants, but are not known to Plaintiff, in their individual capacities , lacked probable cause to arrest or detain Plaintiff in prolonged physical custody for any period of time from December 7 - December 8, 2021.

102.    The wrongful stop and false detention of Plaintiff by the Defendants were committed under color of law, customs, and statutes of the State of New York.

103.    The Defendants acted under color of the law to deny the Plaintiff their Constitutional rights to equal protection, due process, and freedom from seizure by wrongfully detaining the Plaintiff on the street and in her vehicle while in Nassau County, New York, and wrongfully holding her under the threat of imprisonment for an indeterminate period of time, without providing a reasonable basis and/or investigation warranting custody, or other due process guarantees secured to the Plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

104.    Such violations were continued by the Defendants in their refusal to adequately investigate the false charges against the Plaintiff and to properly review and investigate the actions of Defendants against the Plaintiff. Specifically, Defendants failed to investigate and verify the veracity of the Plaintiff' alleged warrant and protestations of the abusive treatment to which she was subjected. Despite the blatant lack of any probable cause for wrongly stopping, detaining, and arresting Plaintiff.

105.    Despite the information known to the Defendants at the time of the car stop, the Defendants willfully detained Plaintiff for without probable cause reason and for an unlawful period of time. Plaintiff repeatedly asked for an explanation of the situation, but the Defendants never offered any significant response. Plaintiff had to endure harassment and degrading questioning by

the Defendants.  The Defendants lacked the authority to stop, hold, search, hand cuff and transport

Plaintiff – there was no probable cause or reasonable suspicion to take Plaintiff into custody.

106.    As a consequence of Defendants' wrongful actions, negligent behavior, and violation

of federal laws, Plaintiff was deprived of her freedom for eleven (11) plus hours, made to suffer

injuries, and were subjected to great fear, terror, personal humiliation and degradation, and still

continue to suffer physical pain, mental and emotional distress as a result of the aforesaid unlawful

conduct of the Defendants until their release.

107.    In doing so, Defendants caused serious and unjustifiable harm to Ms. Leith and her

infant son, K.D.

108.    That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than

five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 - UNREASONABLE SEARCH AND SEIZURE CLAIM

109.    Plaintiff repeat and reiterate the allegations set forth in paragraphs 1 through 108 of

this *Complaint* with the same force and effect, as if the same were fully set forth herein.

110.    The unlawful arrest conducted against the Plaintiff by  Defendants, Sovaras (Badge

#9377), NCPD JOHN/JANE DOES #1-10 all of  whom are known by name by Defendants, but are

not known to Plaintiff**,** in their official and individual capacities, and New York State Troopers

JOHN ROES #1-10 all of  whom are known by name by Defendants, but are not known to Plaintiff,

in their individual capacities, constituted an unreasonable search and seizure by the police officers

as well as abuse of process. Such actions were negligent, reckless, unreasonable and unauthorized,

as Defendants had a duty not to subject Plaintiff and her infant son, K.D., to any unnecessary search

and seizure, but failed to prevent the same, and breached their duty as law enforcement officers.

111.    As a consequence of Defendants' wrongful actions, negligent behavior and violation of federal laws, Plaintiff was deprived of her freedom, were subjected to great fear, terror, personal humiliation and degradation, and suffered great mental and emotional distress as a result of the aforesaid unlawful conduct of Defendants.

112.    Defendant failed to have any reasonable basis in order to establish a reason for a warrantees strip search of Plaintiff. Reasonable suspicion that the Plaintiff were concealing weapons or other contraband must be present to support a warrantees strip search.  There was no reasonable suspicion that the Plaintiff were concealing weapons or other contraband.  Defendants strip searched Plaintiff even though there was no individualized suspicion that he was secreting contraband on his person.

113.    That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

### AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983- MUNICIPAL LIABILITY

114.    Plaintiff repeat and reiterate the allegations set forth in paragraphs 1 through 113 of this *Complaint* with the same force and effect, as if the same were fully set forth herein.

115.    By actively inflicting and failing to prevent the above stated abuses incurred by Plaintiff, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, physical abuse, detained custody and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983, and by the Fourth, Fifth,

and Fourteenth Amendments of the United States Constitution.

116.    Both before and after December 7, 2021, NASSAU COUNTY,  Defendants Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of  whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of  whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, have systematically failed to identify the improper abuse, misuse, vocative acts by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision, and/or restraint.

117.    Upon  information  and  belief,  Defendants  Sovaras  (Badge  #9377),  NCPD JOHN/JANE DOES #1-10 all of  whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of  whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities , the  misconduct review process include but are not limited to the following:

    a.    Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;

    b.    Police  officers  investigating  unwarranted  incidents  systematically  fail  to  credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

    c.    Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

    d.    Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed;

    e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers.

Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

f.  The County of Nassau hastily accepts the allegations of police in light of clear evidence of innocence, and accepts the allegations as provided from police reports regarding excuses for abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

g.  Rather than address the clear racial disparities in traffic stops and arrests, the Commissioner of the NCPD asserted at a hearing before the Nassau County Legislature that the data from his department should be explained by his supposition that many non-white residents may be entering the county and "[coming] here to commit some kind of criminal act."

h.  Pretextual stops of persons of color is a known fact about which the County of Nassau has refused to address despite proof of the ongoing and regular practice.

I.  Nassau County Police Department has done little to combat the systematic bias embedded in the way in which policing is done.

118.  Defendant Nassau County and its Police Commissioner, Patrick Ryder, who is the decision maker and policy setter and the highest ranking police official in the NCPD has consistently refused to address the data in Nassau that shows racial disparities in how policing is done in Nassau County.

119.  What has been displayed by the County of Nassau is a callous disregard for inequities with regard to the treatment of Black and Hispanics that are supported by the data known to them in the areas of arrests, traffic stops, misdemeanor charges, felony charges, searches, auto searches, field interviews, and use of force.

120.  In fact, Commissioner Ryder has made race based and racially insensitive comments that show his own bias and unwillingness to recognize or address the failures of Nassau County and the NCPD or to take any meaningful actions to address the concerns demonstrated by the data.

121.    Nassau County has engaged in and allowed a systemic practice of racial discrimination and profiling of Black and Hispanic persons in its traffic stop, arrests and unlawful searches.  This pattern and practice has been known to and disregarded by the County of Nassau despite them be confronted with it by their own numbers through their reporting and it being pointed out by Legislative sources and community members verbally and in writing.

122.    Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, was executed in this case where the Defendants failed to sufficiently investigate Plaintiff and instead acted under color of statute to knowingly impose false criminal charges upon the Plaintiff.

123.    By permitting and assisting such a pattern of police misconduct, NASSAU COUNTY, Defendants Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, have acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiff' Fourth, Fifth and Fourteenth Amendment rights; to wit the Defendants NASSAU COUNTY, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities were encouraged to believe that their actions against the Plaintiff would be accepted

without impunity, just as these actions have been so accepted to date.

124.    As a consequence of the Defendants' systemic practice, pattern, and custom of intentionally promoting and supporting officers' and official violations of 42 U.S.C. § 1983, Plaintiff was deprived of her freedom and physically and emotionally harmed.

125.    As a proximate cause of the NASSAU COUNTY,  Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, custom and policy of supporting and effectively promoting the very same police abuses which occurred against Plaintiff, said Plaintiff were further subjected to great fear, personal humiliation and degradation, with wanton disregard for the serious harm and damage done to their emotional well being.

126.    In doing so, Defendants caused serious and unjustifiable harm to Ms. Leith and her infant son, K.D.

127.    That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

**AS AND FOR A FIFTH COUNT**
**42 U.S.C. § 1983 - ABUSE OF PROCESS, FABRICATION OF EVIDENCE CLAIM**

128.    Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 through 127 of this *Amended Complaint* with the same force and effect, as if the same were fully set forth herein.

129.    The Defendants, Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and

individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, lacked reasonable suspicion to stop and detain the Plaintiff, and further lacked any probable cause to arrest or retain Plaintiff for any period of time, and abused process when Defendant K. Sovaras gave Ms. Leith the trumped up, false, fabricated and malicious vehicle violation tickets when she was arrested based on an alleged outstanding warrant. Such abuse was continued by Defendant New York State Troopers JOHN ROES #1-10 when they continued to wrongfully detain Ms. Leith after knowing she had no state warrant.

130.    Without such probable cause, Defendants wrongfully arrested, confined, further detained and strip searched Plaintiff.

131.    The false arrest, wrongful confinement, and other wrongful acts conducted against the Plaintiffs by the Defendants constituted an unreasonable search and seizure by police officers, as well as abuse of process, abuse of authority, breach of police procedures, and violations of the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. The Defendants negligently and recklessly breached their duty to prevent the commission of the civil rights violations perpetrated against Plaintiffs, including violations of 42 U.S.C. § 1983, as well as substantive and procedural due process infractions.

132.    Defendants were aware that the actions taken against the Plaintiffs were unnecessary, however, the Defendants continued to harass, intimidate, and prosecute the Plaintiff.  There was an absolute lack of probable cause to arrest and retain the Plaintiff in custody.

133.    As a result of said abuse of process, Plaintiff suffered physical damage, eleven (11) plus hours of wrongful confinement, continued emotional damage, including prolonged stress and

anxiety, fear and frustration, and Plaintiffs have been harmed momentarily in that they incurred attorney fees, and other expenses due to the detainment of Plaintiff.

134.    That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

## AS AND FOR A SIXTH COUNT
## 42 U.S.C. § 1983 - 4th, 5th, AND 14th AMENDMENTS AND 42 U.S.C. § 1981 RACIAL PROFILING AND RACIAL DISCRIMINATION

135.    Plaintiff repeat and reiterate the allegations set forth in paragraphs 1 through 134 of this Complaint with the same force and effect, as if the same were fully set forth herein.

136.    The Defendants, NASSAU COUNTY, Defendants Sovaras (Badge #9377), NCPD JOHN/JANE DOES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their official and individual capacities, and New York State Troopers JOHN ROES #1-10 all of whom are known by name by Defendants, but are not known to Plaintiff, in their individual capacities, acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiff of her rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Fourteenth Amendments and other laws in violation of 42 U.S.C. § 1983.

137.    Plaintiff, along with her infant son K.D., were stopped on the Sunrise Highway-Newbridge Road, Bellmore Section not because she had committed any crime, but because Plaintiff was profiled and arrested on account of being African American.

138.    This was a clear violation of Plaintiff's due process rights protected by both the Fifth and Fourteenth Amendments.

139.    As a direct and proximate result of said acts, Plaintiff and her infant son K.D. have

28

suffered and continue to suffer distress, humiliation, great pain and suffering.

140.    That by reason of the foregoing, Plaintiffs have been damaged in a sum greater than five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

## DAMAGES AND RELIEF

**WHEREFORE**, the Plaintiff each request the following damages and relief:

a.    On the First Count in excess of the sum of five million  ($5,000,000 ) dollars;

b.    On the Second Count in excess of the sum of five million  ($5,000,000 ) dollars;

c.    On the Third Count in excess of the sum of five million  ($5,000,000 )dollars;

d.    On the Fourth Count in excess of the sum of five million  ($5,000,000 ) dollars;

e.    On the Fifth Count in excess of the sum of five million ($5,000,000) dollars;

f.    On the Sixth Count in excess of the sum of five million ($5,000,000) dollars

g.    Compensatory and Punitive damages,  as outlined  in the aforementioned paragraphs and counts, as well as costs and attorneys fees pursuant to 42 U.S.C. § 1988, and as otherwise allowed by law; and,

h.    Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

i.    Any and all other relief this Court deems appropriate and just.

### *JURY TRIAL DEMANDED*

Dated: Hempstead, New York
        November 14, 2022                    Respectfully submitted,

                                             LAW OFFICES OF
                                             FREDERICK K. BREWINGTON

                                   By:    _____

                                             FREDERICK K. BREWINGTON
                                             *Attorneys for Plaintiff*
                                             556 Peninsula Boulevard
                                             Hempstead, NY  11550
                                             (516) 489-6959