UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TIVIA LEITH,

                                    Plaintiff,

                - against -

THE COUNTY OF NASSAU, THE NASSAU COUNTY
POLICE DEPARTMENT, POLICE OFFICER K.
SOVARAS Badge #9377, in his official and individual
Capacity, POLICE OFFICER KATHLEEN REID Badge
#6584 in her official and individual capacity, NEW YORK
STATE TROOPER AZIZ, in his individual capacity,

                                    Defendants.
-----------------------------------------------------------------X

|  |
|--|
| **MEMORANDUM AND ORDER** |
| Civil Action No. 22-06933 (GRB)(AYS) |
| **FILED** |
| **CLERK** |
| 5/6/2026 3:18 pm |
| **U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK LONG ISLAND OFFICE** |

**GARY R. BROWN, United States District Judge**:

Presently before the Court are motions for summary judgment filed by defendant New York State Trooper Jason Aziz ("Trooper Aziz") and defendants Nassau County Police Officer Kevin Sovaras ("Officer Sovaras"), Nassau County Detective Kathleen Reed, s/h/a Police Officer Kathleen Reid ("Det. Reed"), and the County of Nassau (collectively the "County Defendants"). Docket Entries ("DE") 64-65. For the reasons stated herein, both motions are GRANTED.

### Factual Background

Based on the parties' submissions, the following facts are undisputed, except as noted. On August 27, 2020, non-party New York State Trooper Brian Anderson arrested and charged plaintiff Tivia Leith ("plaintiff") with driving while intoxicated ("DWI"). DE 64-31 ¶11. Plaintiff failed to appear for her arraignment on the DWI charge, resulting in the issuance of a bench warrant by the Nassau County District Court for her arrest. *Id*. ¶12. The bench warrant

1

was vacated after plaintiff was arraigned on September 20, 2021.  *Id.* ¶13.  Plaintiff subsequently

pleaded guilty to driving while ability impaired on September 28, 2021.  *Id.* ¶14.

Notwithstanding the vacatur of the bench warrant, non-party New York State Trooper

Jacqueline Colon erroneously entered the warrant into the eJusticeNY computer database

("eJustice") as a new warrant on October 5, 2021.  *Id.* ¶15.  Consequently, information that there

was an outstanding warrant for plaintiff continued to appear as an alert in two electronic

databases – NYSPIN and eJustice – accessible from computers inside police patrol vehicles.  *Id.*

¶¶17-19.

Two months later, on December 7, 2021, plaintiff was driving on Sunrise Highway with

her nine-year-old son, K.D.  At that time, Officer Sovaras was patrolling Sunrise Highway and,

according to his testimony, noticed plaintiff's vehicle had an inoperable plate lamp.  *Id.* ¶23.

Before pulling plaintiff over, Officer Sovaras ran the vehicle's license plate on his patrol vehicle

computer, which revealed that the vehicle's inspection had expired and that plaintiff – the

registered owner of the vehicle – had an outstanding warrant for her arrest.  *Id.*

After receiving the computer response, Officer Sovaras pulled the vehicle over and

confirmed that plaintiff was the subject of the warrant.  *Id.* ¶26.  Officer Sovaras testified that he

called the number for the New York State Police indicated on the warrant, as well as the Nassau

County Police Department ("NCPD") First Precinct and received confirmation that the warrant

was still active.  *Id.*

Officer Sovaras then informed plaintiff that he confirmed that the warrant was active and

advised her that he would take her into custody based on the warrant.  *Id.* ¶30.  Before

transporting her to the First Precinct, however, Officer Sovaras permitted plaintiff to wait with

K.D. until his father arrived to pick him up.  DE 64-6 at 44:7-45:6.  While waiting, Officer

Sovaras searched plaintiff's pockets to make sure that she did not have any weapons. DE 64-31 ¶35. Once K.D. was safely in his father's car, Officer Sovaras transported plaintiff to the NCPD First Precinct in Baldwin. *Id.* ¶43. At the First Precinct, Officer Sovaras issued plaintiff two tickets – one for the expired inspection sticker and one for the defective plate lamp. *Id.* ¶49.

Trooper Aziz reported for his shift at 7:00 p.m. that evening and was assigned to take custody of plaintiff from the NCPD and transport her to the Nassau County Detention Center. *Id.* ¶¶44-45. Trooper Aziz testified that he confirmed the validity of the warrant before taking custody of plaintiff by checking eJustice and retrieving a paper copy of the warrant from plaintiff's file. *Id.* ¶¶46-47. Trooper Aziz then took custody of plaintiff from the NCPD around 9:00 p.m. and arrived at the Nassau County Detention Center around 10:00 p.m. DE 65-43 ¶¶23, 27.

Plaintiff testified that upon arrival at the Nassau County Detention Center, an unidentified officer said to Trooper Aziz: "[a]re you crazy? I told the a-hole . . . [t]his girl don't have a warrant. It's been vacated in 2020 by a judge." DE 64-6 at 80:5-9. Plaintiff testified that she believes the unidentified officer was referring to "officers at Nassau County" when he said "a-hole." *Id.* Trooper Aziz denies hearing that statement. DE 64-5 at 36:24-37:5.

While conducting the intake of plaintiff, an NCPD officer assigned to the front desk at the detention center, Sergeant Ritter, was unable to locate any active warrant for plaintiff in his files or in his computer system. DE 64-31 ¶52. As a result, plaintiff was released from custody at 12:33 a.m. on December 8, 2021, and Trooper Aziz drove her home. *Id.* ¶¶53-54.

On November 14, 2022, plaintiff commenced the instant action alleging claims under § 1983 based on alleged violations of her rights and further asserts similar claims on behalf of her son, K.D. DE 1. Plaintiff filed an amended complaint on November 26, 2022, and filed the

3

operative second amended complaint on April 21, 2023.  Defendants now move for summary

judgment as to plaintiff's claims for: (1) malicious prosecution; (2) false arrest/imprisonment; (3)

unreasonable search and seizure; and (4) false arrest/imprisonment on behalf of K.D.[1]

## Discussion

### I.   *Standard of Review*

Motions for summary judgment are decided under the oft-repeated and well understood

standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F.

Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir.

2016), which discussion is incorporated by reference herein.

### II.   *Malicious Prosecution*

To succeed on a malicious prosecution claim, "New York law requires a plaintiff to

demonstrate that (1) the defendant initiated a prosecution against plaintiff, (2) without probable

cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ]

(4) the matter terminated in plaintiff's favor." *Azeez v. City of New York*, 790 F. App'x 270, 273

(2d Cir. 2019) (internal quotations and citation omitted).  The first element requires "the

initiation or continuation of a *criminal* proceeding against plaintiff." *Manganiello v. City of New

York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted) (emphasis added).

---

[1] The second amended complaint includes a claim for "abuse of process and fabrication of evidence," which was previously dismissed without prejudice, and the second amended complaint does not include any facts sufficient to reinstate this cause of action.  In addition, plaintiff's cause of action under *Monell* was previously dismissed with prejudice by this Court's October 25, 2023, Memorandum and Order.  DE 39.  For the avoidance of doubt, those claims are no longer before the Court.

The second amended complaint also contains a claim for unreasonable search and seizure based on a search conducted by Det. Reed at the First Precinct.  The County Defendants concede that issues of fact exist with respect to that claim, which will proceed to trial.

Here, plaintiff's malicious prosecution claim is based on the fact that Officer Sovaras issued her two tickets for operating her vehicle with an expired inspection sticker and an inoperable plate lamp. *See* DE 64-3. However, traffic infractions do not constitute criminal violations for these purposes. *Azeez*, 790 F. App'x at 274 (upholding grant of summary judgment disposing of malicious prosecution claim predicated on traffic infractions); N.Y. Veh. & Traf. Law § 155 ("A traffic infraction is not a crime."). Therefore, Officer Sovaras did not initiate *criminal* proceedings against plaintiff, and she cannot satisfy the first element of a malicious prosecution claim. Additionally, plaintiff admits that she had her vehicle inspected and her plate lamp repaired after the issuance of the tickets. DE 64-31 ¶¶56-57. Accordingly, summary judgment is granted for defendants.

### III.   *False Arrest/Imprisonment*

"Under New York law, the elements of a false arrest and false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (citation and internal quotations omitted). "Probable cause is a complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

"When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." *United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008). "Even if the arrest warrant in question later turns out to be invalid, an officer may still have probable cause to arrest the target of the warrant provided 'the arresting officers did not know, and had no reason to know, that the warrant had been vacated' or was otherwise invalid." *Morrison v. City of New York*, No. 14-CV-04508 (MKB), 2019 WL

175121 at *6 (E.D.N.Y. Jan. 10, 2019) (quoting *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)).  In short, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Thus, on these facts, the information reviewed by defendants on eJustice provides probable cause that creates a complete defense to the false arrest claim and claims arising from the brief period of detention that followed.

## IV.    *Qualified Immunity*

Even assuming, *arguendo*, that probable cause did not defeat plaintiff's claims, an arresting officer is entitled to qualified immunity if there was arguable probable cause for the arrest.  Arguable probable cause exists "when, either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Jin v. City of New York*, 169 F.4th 373, 380-81 (2d Cir. 2026) (internal quotations and citations omitted).

Recently, the Second Circuit issued two decisions further examining qualified immunity at summary judgment in a similar context.  In these decisions, the Circuit explained the applicable standard.

In *Sacaza v. City of New York*, a police officer arrested plaintiff for allegedly sexually assaulting a minor on a Metropolitan Transit Authority bus based on the minor's statements as well as her identification of him in a photo array and at an in-person lineup.  169 F.4th 363, 366-68 (2d Cir. 2026).  The Second Circuit acknowledged that some facts – including a video from the bus that did not definitively show any contact between the plaintiff and the minor – could have cast doubt on the probable cause showing.  Nevertheless, the Court of Appeals held that, because "a reasonable jury *could find* [the officer] had probable cause to arrest and charge [the

6

plaintiff] or the lack thereof, the appropriate remedy is not to leave that determination to the jury, but to grant summary judgment on qualified immunity to the officer." *Id.* at 372 (emphasis added). The Circuit reasoned that "[i]f a reasonable jury could find probable cause, then so could a reasonable officer. And if a reasonable officer could find probable cause, then [defendant] is entitled to qualified immunity." *Id.* at 371.

In *Jin v. City of New York*, police officers responded to a 911 call made by a man who alleged that the plaintiff struck the man's father. 169 F.4th at 378. When the officers arrived on scene, the 911 caller described the incident to them, even though he was not an eyewitness, and the victim – who did not speak English – "point[ed] to the injuries on his arm and then, picking up an umbrella, simulated how the plaintiff had struck him." *Id.* The plaintiff reappeared while the officers were still present and informed the officers that neighbors in the apartment next door could corroborate her version of the story that the victim beat her and threw her out of the apartment. *Id.* The officers did not investigate further and arrested the plaintiff. *Id.* The plaintiff argued that the officers could not have had probable cause without an eyewitness account or a statement from the victim, but the Second Circuit held that "even under [the plaintiff's] version of the disputed facts, reasonable officers could disagree as to whether there was probable cause to arrest based upon the reasonably trustworthy information relayed to the Officers," and thus, the officers were entitled to qualified immunity. *Id.* at 382, 386.

Here, Officer Sovaras and Trooper Aziz had at least arguable probable cause to arrest plaintiff. Before Officer Sovaras pulled plaintiff over, he ran the vehicle's license plate in eJustice, and it is undisputed that an active warrant for plaintiff populated in the system. DE 64-31 ¶19. Courts in this circuit have held that "an [o]fficer['s] discovery of [a] bench warrant provided probable cause to arrest for an open warrant, even though, unknown to [him] at the

7

time, the warrant had been vacated." *Jimenez v. City of New Rochelle*, No. 19-CV-2525 (VB), 2021 WL 1178090 at \*5 (S.D.N.Y. Mar. 29, 2021) (internal quotations and citation omitted).

As to Trooper Aziz, his undisputed testimony reveals that he independently acquired at least arguable probable cause when he confirmed the warrant was active by checking eJustice and pulling a paper copy of the warrant.  DE 64-31 ¶¶46-47.  Plaintiff does not dispute that the warrant appeared as active on eJustice.  *Id.* at ¶19.

The Second Circuit has found that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotations and citation omitted).  Accordingly, a reasonable jury could find that once Officer Sovaras and Trooper Aziz ascertained that the warrant was active, they had at least arguable probable cause to arrest plaintiff and are hence entitled to qualified immunity.

For the same reasons, plaintiff's invocation of a statement made by an unidentified law enforcement officer concerning the invalidity of the warrant proves unavailing.[2]  Plaintiff testified that upon arrival at the Nassau County Detention Center, the officer said to Trooper Aziz "[a]re you crazy? I told the a-hole . . . [t]his girl don't have a warrant.  Its been vacated in 2020 by a judge."  DE 64-6 at 80:5-9.  Based on this statement, plaintiff presumes, without any additional corroborating information, that the unidentified officer informed Officer Sovaras that no active warrant existed for plaintiff before he arrested her.

Even assuming the truthfulness and admissibility of the unidentified officer's statement, plaintiff's testimony only serves to demonstrate that Officer Sovaras was – at most – faced with

---

[2] Plaintiff's assertion that Officer Sovaras pretextually stopped her because of her race and gender does not bear on the summary judgment analysis.  This Court previously dismissed plaintiff's cause of action for "racial profiling and racial discrimination."  DE 39.

conflicting information regarding the validity of the warrant.  The fact that a conversation could have cast some doubt on the basis for plaintiff's arrest is of no consequence.  *Curley*, 268 F.3d at 70 ("Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.") (internal quotations and citation omitted).

As to Trooper Aziz, plaintiff asserts that issues of fact exist as to the timing of when Trooper Aziz knew that the warrant was inactive because "there is [] documentary evidence that the State Troopers tried to cancel the warrant at 9:40 pm on December 7, 2021 and after 12 am on December 8, 2021."  DE 65-44 at 11.  However, Trooper Aziz took plaintiff into custody around 9:00 p.m. and arrived at the Detention Center around 10:00 p.m., meaning Trooper Aziz could not have known of the warrant's invalidity until after he took plaintiff into custody.  DE 65-43 ¶¶23, 27.

Further, once Sergeant Ritter advised Trooper Aziz that he could not locate a warrant for plaintiff, other officers continued searching for a warrant, and Trooper Aziz diligently contacted the New York State Police Farmingdale Barracks for further guidance and instruction.  *Id.* ¶31. As soon as their efforts demonstrated that no valid warrant existed, plaintiff was released from custody, and Trooper Aziz drove plaintiff home.  DE 64-31 ¶¶53-54.

In sum, the warrant supplied Officer Sovaras and Trooper Aziz with at least arguable probable cause for plaintiff's arrest "regardless of the disputed facts" that plaintiff posits.  *Jin*, 169 F.4th at 386.  Accordingly, defendants' entitlement to qualified immunity provides an alternative basis for the entry of summary judgment.  *Id.* at 381 (even when "accepting the version of the facts most favorable to [plaintiff] . . . we conclude that the Officers are entitled to qualified immunity because there was still arguable probable cause for [plaintiff's] arrest.").

## V.   *Illegal Search and Seizure*

Qualified immunity also "shields police officers who conduct warrantless searches so long as they could 'reasonably have believed that the search' fit within an exception to the warrant requirement." *Vassiliou v. City of New York*, 2021 WL 76916 at *8 (E.D.N.Y. Jan. 7, 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"The search-incident-to-arrest doctrine is an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search." *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017).  The search incident to arrest exception undermines plaintiff's claim.

Plaintiff alleges in the Second Amended Complaint that officers unlawfully searched her car and handbag, but it is undisputed that Officer Sovaras did not search plaintiff's car or other belongings.  DE 64-31 ¶37.  The body-worn camera footage from the scene does not show plaintiff's car being searched.  *Id.* ¶38.  Officer Sovaras therefore cannot be held liable based on that allegation.

The only search conducted by Officer Sovaras was the search of plaintiff's jacket pockets.  "To determine whether a particular search incident to arrest falls within this exception, 'we examine the degree to which [it] intrud[es] upon an individual's privacy and the degree to which [it is] needed for the promotion of legitimate governmental interests.'" *Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019) (quoting *Birchfield v. North Dakota*, 579 U.S. 438, 461 (2016)).  Review of the body-worn camera footage – the authenticity of which is undisputed (DE 64-31 ¶21) – reveals that the search was minimally invasive.  County Defendants' Ex. Q.

Accordingly, summary judgment for Officer Sovaras on the illegal search and seizure claim is granted.

## VI.   *Claims on Behalf of K.D.*

"Where a minor plaintiff is detained not on suspicion of criminal activity but, rather, as incident to their parent or guardian's arrest, it is 'inappropriate to apply the traditional false arrest inquiry to their civil rights claim.' Instead, courts have asked whether a seizure under such circumstances was reasonable." *Vasicka v. Kerwin*, No. 18-CV-6858 (RPK) (SJB), 2022 WL 4641585 at *6 (E.D.N.Y. Sept. 30, 2022) (citations omitted).

Here, Officer Sovaras acted reasonably in having K.D. remain in plaintiff's vehicle while waiting for K.D.'s father. Plaintiff's assertions that "Sovaras attempted to take K.D. into police custody and down to the police precinct with [plaintiff]," and that both plaintiff and K.D. were crying at the scene is belied by the undisputed evidence. County Defendants' Ex. P. Neither Officer Sovaras nor any other officer attempted to take K.D. into custody. *Id.* Officer Sovaras even permitted plaintiff to wait at the scene with K.D. until his father arrived. County Defendants' Exs. P and Q. The busy road on which plaintiff was stopped also posed a danger to K.D. and served as additional justification for Officer Sovaras' decision to have K.D. remain in plaintiff's car until his father arrived. *Graham v. City of New York*, No. 08-CV-3518 (KAM) (RML), 2011 WL 3625074 at *7 (E.D.N.Y. Aug. 17, 2011) ("given plaintiff's age and the fact that the car was stopped on a busy street, it was reasonable for defendants to confine [the minor plaintiff] to the car for a few minutes until arrangements could be made for his care."). Accordingly, summary judgment is granted for defendants as to the claims brought on behalf of K.D.

## VII.   *Conclusion*

For the reasons set forth above, both Trooper Aziz's and the County Defendants' motions for summary judgment are GRANTED.

**SO ORDERED.**

Dated: Central Islip, New York
      May 6, 2026

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge
